UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEAU HODGES,<br><br>        Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>        Defendant. | Case No. 13-cv-01128-WHO<br><br>**ORDER GRANTING APPLE'S MOTION TO DISMISS WITH LEAVE TO AMEND AND MOTION TO STRIKE WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 21 |

## INTRODUCTION

Plaintiff Beau Hodges ("Hodges") alleges that a MacBook Pro with Retina Display ("rMBP") manufactured by LG, which he purchased, is inferior to an rMBP manufactured by Samsung, and on that basis seeks to bring a class action against Apple Inc. ("Apple") for violations of the California Consumer Legal Remedies Act ("CLRA"), violations of the California Unfair Competition Law ("UCL"), and breach of contract. FAC ¶ 3. Because, fundamentally, Hodges has not identified any affirmative misrepresentation made by Apple, and for the reasons stated below, the Court GRANTS Apple's motion to dismiss Hodges's First Amended Complaint ("FAC") and to strike his request for injunctive relief with leave to amend.

## BACKGROUND

On June 12, 2012, Apple introduced its MacBook Pro with Retina Display. FAC ¶ 18. The rMBP contains a liquid-crystal display ("LCD") screen with a density of pixels high enough that the human eye is incapable of distinguishing between individual pixels at a particular viewing distance, thereby creating an exceptionally sharp image. FAC ¶¶ 2, 12, 14, 15, 18, 20. Apple calls this feature the "Retina Display." FAC ¶¶ 10-12. Hodges alleges that the "high levels of pixel density" is "[t]he distinguishing feature of the Retina Display" and that Apple's advertising for the

1   rMBP "focused almost exclusively on the quality of images produced by its Retina Displays."
2   FAC ¶¶ 12, 19. Apple's website said that the rMBP has "over 5 million pixels in[] a 15.4-inch
3   display . . . 2880-by-1800 resolution . . . 29 percent higher contrast ratio than a standard MacBook
4   Pro . . . 178-degree view of everything on the screen." FAC ¶ 20. Apple, Hodges claims,
5   "deliberately targeted its marketing effort at consumers who desire the absolute highest quality
6   computer displays" and touted the rMBP as having "the world's highest-resolution notebook
7   display." FAC ¶¶ 19, 22.

8         Hodges purchased an rMBP on June 22, 2012. FAC ¶ 3. One month later, he started
9   noticing problems with the images on his laptop. FAC ¶ 7. Hodges alleges that, unbeknownst to
10  consumers, the LCD screens in the rMBPs are produced by two different manufacturers, Samsung
11  and LG. FAC ¶ 24. According to the FAC, LG produced an inferior version of the LCD screens
12  in rMBPs compared to Samsung's version. FAC ¶ 25. The LG screens would experience either
13  "image retention" or "burn-in" problems. FAC ¶ 26. Image retention occurs when an
14  accumulation of static leaves a temporary residual image on the screen that goes away after the
15  static build-up dissipates—this was the problem Hodges's rMBP exhibited. FAC ¶¶ 7, 27. "Burn-
16  in" is similar to image retention, but is more serious because the residual image remains on the
17  screen permanently. FAC ¶ 29. Samsung-manufactured screens, however, do not have either
18  problem. FAC ¶ 30. In addition, Samsung's screens allegedly "outperform[]" LG's screens by
19  being brighter and having greater accuracy of color. FAC ¶ 31.

20        Hodges claims that Apple "knew" about the differences between the two screens, yet
21  "publicly denied" them. FAC ¶¶ 33-37. He alleges that "Apple represents the rMBP as a single,
22  unitary product" and that "[n]one of Apple's advertisements or representations discloses that it
23  produces rMBPs with display screens that exhibit different levels of performance and quality"—
24  information that consumers would want to know before purchasing an rMBP. FAC ¶¶ 38-39.
25  Consumers have no way of knowing who manufactured their rMBP until after they purchase an
26  rMBP—all for the same price—and open the box. FAC ¶¶ 34, 40. No consumer, he argues,
27  would willingly purchase the inferior product given a choice between it and a better version. FAC
28  ¶ 40. The FAC gives examples of customers angered over the disparity between the Samsung and

2

1  LG versions of the rMBP. *See, e.g.*, FAC ¶¶ 42-43. Hodges claims that Apple could have given

2  consumers a choice between the two, but instead continues to hide the difference "[t]o this day."

3  FAC ¶ 44. "Thus," he says, "while every consumer that purchased an rMBP justifiably expected

4  to receive a product commensurate with Apple's representations, only some did." FAC ¶ 3.

5  As required by California Civil Code § 1782 for CLRA actions, on March 11, 2013,

6  Hodges demanded in writing that Apple fix the LG-produced rMBP's problems and give notice to

7  all affected consumers of its intention to do so. FAC ¶ 64. Apple did not do this. FAC ¶ 65.

8  Hodges filed this putative class action against Apple on March 13, 2013.

## LEGAL STANDARD

### I. MOTION TO DISMISS

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The complaint "does not need detailed factual allegations," but instead only needs enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012).

Additionally, fraud claims are subject to a higher standard and must be pleaded with particularity. FED. R. CIV. PRO. 9(b). This is true of claims under both the CLRA and UCL that are grounded in fraud, which must "be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003) (quotation marks omitted). Such claims "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). A plaintiff claiming fraud must also plead reliance. *Kwikset Corp. v. Super. Court of Orange Cnty.*, 51 Cal. 4th 310, 326-27

1  (2011) (UCL); *Princess Cruise Lines v. Super. Court of Los Angeles Cnty.*, 101 Cal. Rptr. 3d 323,
2  331 (Ct. App. 2009) (CLRA).  The challenged statements must be judged against the "reasonable
3  consumer" standard under either statute.  *Consumer Advocates v. Echostar Satellite Corp.*, 8 Cal.
4  Rptr. 3d. 22, 29 (Ct. App. 2003).

If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts.  *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).  In particular, "dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice." *Vess*, 317 F.3d at 1108.

## II. MOTION TO STRIKE

Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. PRO. 12(f).  "However, motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic."  *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 969 (N.D. Cal. 2009) (quotation marks and brackets omitted).  Thus, while a court "must view the pleading in a light most favorable to the pleading party," motions to strike "should be denied unless the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit."  *Id.* (citations omitted).

## DISCUSSION

### I. MOTION TO DISMISS

Apple moves to dismiss Hodges's claims under the CLRA and UCL, and for breach of contract.  The Court will address these in turn.

#### A. CLRA

The CLRA prohibits "[r]epresenting that goods . . . have . . . characteristics, . . . benefits, or quantities which they do not have" or "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another."  CAL. CIV. CODE § 1770 (West 2013).  The CLRA prohibits both actual misrepresentations and "fraudulent omissions."  *Daugherty v. Am. Honda*

4

1    *Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 126 (Ct. App. 2006).  In interpreting the statute and

2    *Daugherty v. American Honda Motor Company*, the Ninth Circuit held that "[a] manufacturer's

3    duty to consumers is limited to its warranty obligations absent either an affirmative

4    misrepresentation or a safety issue."[1]  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th

5    Cir. 2012).  To survive a motion to dismiss, the plaintiff must plead with particularity that the

6    defendant made an actual misrepresentation, an omission "contrary to a representation actually

7    made by the defendant, or an omission of a fact the defendant was obliged to disclose" related to

8    safety concerns.  *Id.*; *Daugherty*, 51 Cal. Rptr. 3d at 126; *see also Bardin v. Daimlerchrysler

9    Corp.*, 39 Cal. Rptr. 3d 634, 648 (Ct. App. 2006).

### 1. CLRA:  Actual Misrepresentation

11   Hodges fails to plead with particularity that Apple made any actual misrepresentations

12   about its rMBPs.  The CLRA provides a cause of action if a defendant represents that goods have

13   characteristics that they do not have or are of a particular quality that they are not, and the plaintiff

14   can show an actual misrepresentation.  CAL. CIV. CODE § 1770 (West 2013); *Daugherty*, 51 Cal

15   Rptr. at 126.  Nowhere in the FAC, however, has Hodges pointed to an actual misrepresentation

16   Apple made, let alone one that he relied upon.  True, Hodges states that "Apple represents the

17   rMBP as a single, unitary product, described as the highest quality notebook display on the

18   market,"  FAC ¶ 38; Opp'n at 4, 8, and argues that by selling its rMBPs with a "singular 'Retina

19   Display'" being represented as only one product, Apple is making an affirmative

20   misrepresentation.  Opp'n at 9.  But these assertions are bare and conclusory since Hodges does

21   not identify a single example of Apple actually representing that the rMBPs are "single" or

22   "unitary."  In addition, the FAC does not explain when, where, and how Apple made these

23   supposed misrepresentations, as Hodges is required to show under *Vess*.  317 F.3d at 1106.

24   Hodges has not adequately pleaded any actual misrepresentation that would entitle him to relief.

25   Hodges is incorrect in arguing that Apple's claims that the rMBP has "the world's highest

26   resolution notebook display" or "the world's most advanced notebook display" amount to actual

---

[1] Hodges does not claim that Apple violated any express warranty.  To be sure, Hodges does not even mention the existence of any warranty in his FAC.

misrepresentations. FAC ¶¶ 19, 46; Opp'n at 9. While Apple's claim that the rMBP has the "world's highest resolution [] display" is arguably actionable because it "could be established or disproved through discovery and hence is not mere puffery," nowhere does Hodges allege that the rMBPs—whether produced by LG or Samsung—do not have the highest resolution notebook display. For example, Hodges does not challenge Apple's claim that the rMBP, whether produced by Samsung or LG, has "over 5 million pixels" and "2880-by-1800 resolution" even though he says that "[t]he distinguishing feature of Retina Display technology is its high level of pixel density." FAC ¶¶ 12, 20. Similarly, Hodges does not dispute any other technical specifications Apple gives. Further, describing a product as the "most advanced," like stating that a product has the "latest technology," is non-actionable puffery because it is a "[g]eneralized, vague, and unspecified assertion[] . . . upon which a reasonable consumer could not rely." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139-40 (C.D. Cal. 2005) (holding that "latest technology" is puffery). Hodges fails to present any actionable statements by Apple that the rMBPs have a characteristic that they do not have or are of a particular quality that they are not, and therefore fails to make a claim of actual misrepresentation.

Assessing the totality of Apple's statements as one, as Hodges urges the Court to do, does not alter this conclusion. Citing *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000 (C.D. Cal. 2010), Hodges argues that a number of Apple's statements, which might be puffery if considered in isolation, should instead be assessed as a whole and may thus amount to an actual misrepresentation. The *Lima* court held, "The relevant question is whether the statements, taken as a whole, are likely to deceive members of the public." *Id.* at 1008. That Apple claimed the rMBP is "the world's highest resolution notebook display" with the "most advanced" technology, in addition to Apple's other statements, would not lead a reasonable consumer to believe that its products were not made by different manufacturers, might not have variations in them, or were not susceptible to problems. Even taken as a whole, Apple's statements are not likely to deceive members of the public and thus do not amount to actual misrepresentations under the CLRA. Hodges fails to adequately plead an actual misrepresentation that would entitle him to relief.

### 2. CLRA: Fraudulent Omission

Hodges similarly fails to plead with particularity what facts Apple was "obliged to disclose" but did not, or what omissions it made contrary to actual representations. Observing that "California courts have generally rejected a broad obligation to disclose," the Ninth Circuit explained that a defendant "is not liable for a fraudulent omission concerning a latent defect under the CLRA, unless the omission is 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Wilson*, 668 F.3d at 1141 (citing *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 118 (Ct. App. 2006)). While it acknowledged that California courts are split on the issue, the Ninth Circuit was persuaded that only "safety concerns" trigger an obligation to disclose a latent defect. *Id.* at 1141-42. Citing *Daugherty*, the court said, "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Id*. This stems from the policy concern that to "broaden the duty to disclose beyond safety concerns would eliminate term limits on warranties, effectively making them perpetual." *Id.* (quotation omitted). Thus, a district court properly dismisses a CLRA claim where the plaintiff does not "claim that the alleged defect posed a threat to his own safety or that of others." *Id.*

Hodges argues that whether a duty to disclose exists depends on a four-factor test for "materiality," which some courts have applied. *See, e.g.*, *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 593-94 (Ct. App. 2011); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007). However, the Ninth Circuit in *Wilson v. Hewlett-Packard* held that even if the four-factor test is considered, "for the omission to be material, the failure must [still] pose 'safety concerns.'" *Wilson*, 668 F.3d at 1142-43 (citations omitted). The Ninth Circuit adopted this limitation for claims under both the CLRA and UCL. *Id.*

The Court follows *Wilson*. Hodges has not alleged that Apple's failure to disclose that rMBPs are manufactured by two different companies, or that one version of the rMBP is more susceptible to malfunction than the other, relates to a safety concern or issue. Without pleading that Apple was bound to disclose some fact related to his own safety or that of others, Hodges cannot adequately plead fraudulent omission under the CLRA. Hodges similarly fails to

7

1  adequately plead fraudulent omission under the CLRA by not alleging that Apple made some
2  omission that is contrary to a representation it actually made.

### 3. Hodges Fails To State A Claim Under The CLRA.

Because Hodges has not pleaded with particularity any actual misrepresentation or any omission of a safety-related fact that Apple was obliged to disclose, nor has he pleaded with particularity any omission contrary to a representation Apple made, he fails to state a claim for relief under the CLRA.

### B. UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Wilson*, 668 F.3d at 1140.

### 1. UCL: "Fraudulent" Prong

Hodges fails to state a claim under the UCL's "fraudulent" prong because he does not plead with particularity that Apple made any deceptive representations. A claim under the "fraudulent" prong of the UCL "require[s] only a showing that members of the public are likely to be deceived." *Daugherty*, 51 Cal. Rptr. 3d at 128; *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 439, 457 (Ct. App. 2000). This includes "representations that deceive because they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL." *Morgan v. AT&T Wireless Servs.*, 99 Cal. Rptr. 768, 785 (Ct. App. 2009). As discussed above, Hodges can point to no actionable statement that Apple made which is untrue, misleading, or deceptive.

Hodges also fails to state a claim under the UCL's "fraudulent" prong because he does not plead with particularity that Apple had a duty to disclose some fact but did not do so. "[A] failure

to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Daugherty*, 51 Cal. Rptr. 3d at 128. In *Bardin v. Daimlerchrysler Corp.*, the court held that "members of the public must have had an expectation or an assumption" about the matter in question for liability to attach. 39 Cal. Rptr. 3d at 647. In this case, Hodges has not alleged with particularity that members of the public had any reasonable expectation or assumption that rMBPs are all identical and from the same manufacturer, or are not susceptible to defects. He has not alleged that Apple has an obligation to identify its suppliers when it offers a product, or to disclose which product may be more or less susceptible to defects unrelated to safety. Hodges thus fails to state a claim for relief under the "fraudulent" prong of the UCL because he has not pleaded with particularity that Apple made any misstatements or had a duty to reveal some fact and did not do so.

### 2. UCL: "Unfair" Prong

Hodges fails to state a claim under the UCL's "unfair" prong because he does not plead with particularity that Apple violated some public policy or that any harm to him outweighs the utility of Apple's conduct. "California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action." *Rubio*, 613 F.3d at 1204; *Davis v. Ford Motor Credit Co.*, 101 Cal. Rptr. 3d 697, 707 (Ct. App. 2009). Some courts have held that the "unfair" prong requires alleging a practice that "offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the policy must be "tethered to specific constitutional, statutory or regulatory provisions." *Bardin*, 39 Cal. Rptr. 3d at 642, 645 (quotations omitted). Other courts have held that the court must apply a balancing test that "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Schnall*, 93 Cal. Rptr. 4th at 456.

Hodges does not state a claim for relief under either analysis. Under the first test, a plaintiff must identify an actual policy based on a legal provision that the defendant violated. The FAC alleges that Apple's violations of the "public policy against engaging in unfair competition and deceptive conduct towards consumers . . . constitutes violations of the unfair prong." FAC ¶ 78. Far from identifying a policy "tethered to [a] *specific* constitutional, statutory or regulatory

9

provisions," Hodges fails to point to any law whose policy Apple violated except for a vague allusion to deceit. Even so, Hodges does not say how Apple's conduct violated that policy—as explained above, Hodges already failed to adequately plead any deceit by Apple, whether through actual misrepresentations or omissions. He also does not allege how Apple's conduct "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." As the court said in *Baba v. Hewlett-Packard Co.*, "cursorily listing the same string of statutes as were associated with the 'unlawful' prong and alleging vaguely that '[Defendant's] conduct offends public policy and is unethical, oppressive, unscrupulous and violates the laws stated' . . . necessitates dismissal." No. 09-cv-05946-RS, 2010 WL 2486353, at *8 (N.D. Cal. June 16, 2010). Hodges thus fails to state a claim for relief under this analysis.

With regard to the second test, the Ninth Circuit observed that the balancing test for unfairness under the UCL "is currently in flux among California courts." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012). Although courts have not definitively decided the parameters of how to apply the balancing test, the Ninth Circuit in *Davis v. HSBC Bank Nevada* examined the extent to which the defendant caused, or the plaintiff contributed to, the alleged harm and the extent to which any harm is offset by the defendant's justification for its actions. *Id.* at 1170. In that case, the plaintiff alleged that the defendants defrauded customers by offering credit cards without adequately disclosing that cardholders would be subject to an annual fee. The court noted that the plaintiff failed to read the terms and conditions of the credit card before agreeing to them and "refused" to cancel his card within 90 days for a full refund despite having the opportunity to do so. *Id.* On the other hand, the defendant did not breach any duty to disclose information. Thus, the court held, the complaint was properly dismissed for failing to state a claim because the plaintiff did not show that the harm he suffered outweighs the utility of the defendant's conduct.

Here, as Hodges admits in his Brief in Opposition only, his rMBP comes with a one-year warranty. Opp'n at 20. His rMBP started malfunctioning one month after his purchase, and he filed this suit about eight months after his purchase; Hodges has not alleged that he availed himself of the warranty. Like the plaintiff in *Davis*, Hodges's refusal to take advantage of the

10

warranty weakens his claim of harm and unfairness.  Conversely, Hodges fails to allege that Apple violated any duty of disclosure.  Further, Hodges inadvertently points to the utility of Apple's conduct—offering a product that "generated a significant amount of buzz among tech-savvy consumers," FAC ¶ 17—which seemingly indicates that Apple experienced strong consumer demand for the product.  Balancing Apple's need to meet that demand by using two manufacturers against a consumer who experienced harm and declined to take advantage of the warranty Apple offers, the unfairness scale weighs in Apple's favor.  Hodges fails to state a claim for relief under either analysis of the UCL's "unfair" prong.

### 3.  UCL: "Unlawful" Prong

Hodges fails to state a claim under the UCL's "unlawful" prong because he does not plead with particularity that Apple violated any law.  The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." *Daugherty*, 51 Cal. Rptr. 3d at 128.  For example, a violation of the CLRA could also constitute a violation of the UCL's "unlawful" prong.  In addition to identifying the "other laws," a plaintiff "must identify the particular section of the statute that was violated" and "plead with particularity how the facts of this case pertain to that specific statute." *Baba*, 2010 WL 2486353, at *6.  Here, Hodges merely accuses Apple of "violating Civil Code §§ 1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§ 17200, *et seq.*, 17500, *et seq.*, and the common law" without stating which part of each statute was violated and how.  FAC ¶ 75.  Because Hodges fails to plead with particularity how Apple violated any statute, he also fails to adequately plead a violation under the UCL's "unlawful" prong.

### 4.  Hodges Fails To State A Claim Under The UCL.

Because Hodges has not pleaded with particularity that Apple engaged in any unlawful, unfair, or fraudulent business act or practice, he fails to state a claim for relief under any prong of the UCL.

### C.  Breach of Contract

Hodges fails to adequately plead a breach of contract.  In his FAC, Hodges argues that "Apple failed to provide [him] and the other Class members with the benefit of their bargain with

11

respect to the rMBPs they purchased." Opp'n at 21. "A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Armstrong Petrol. Corp. v. Tri-Valley Oil & Gas Co.*, 11 Cal. Rptr. 3d. 412, 424 n.6 (Ct. App. 2004). Hodges argues that each purchase of an rMBP constitutes a contract. FAC ¶ 86. Assuming a contract exists, a defendant has not "breached any contractual obligations to consumers" when consumers bargain for some product and "plaintiffs have presented no evidence that this is not what they received." *Lopez v. Nissan N. Am.*, 135 Cal. Rptr. 3d 116, 136 (Ct. App. 2011). Here, as Hodges alleges, "Apple offered to sell Hodges and the other Class members a 'MacBook Pro with Retina display' that was the 'world's highest resolution notebook display.'" Opp'n at 21; *see also* FAC ¶¶ 12, 19. Hodges does not allege that that is not what consumers receive when they buy an rMBP, even if defective. The fact that some rMBPs were better or worse than others does not alter the fact that consumers received what Apple advertised. Hodges must articulate the terms of his alleged contract with Apple with far greater specificity for this claim to survive.

Hodges does not allege that Apple violated the one express contract between them—the warranty. As *Daugherty* states, "A warranty is a contractual promise from the seller that the goods conform to the promise." 51 Cal. Rptr. 3d at 122. As noted before, absent either an affirmative misrepresentation or a safety-related omission, a manufacturer's liability is limited to its warranty. *Wilson*, 668 F.3d at 1141. Hodges does not assert that Apple failed to honor its warranty. Indeed, Hodges has not even alleged that he made any attempts to avail himself of it.

For the same reasons, Hodges's allegation that Apple breached the implied contractual covenants of good faith and fair dealing also falls short. The implied covenants ensure that no party to a contract will "injure the right of the other to receive the benefits of the agreement." *Daly v. United Healthcare Ins. Co.*, No. 10-cv-03032-LHK, 2010 WL 4510911, at *3 (N.D. Cal. Nov. 1, 2010). Apple asserts, and Hodges does not dispute, that its one-year limited warranty is available to consumers who have a defective rMBP and want to replace it. Hodges has not pointed to any examples of Apple refusing to honor its warranty. He has not pleaded any facts showing

1  how Apple is unfair or acts in bad faith when dealing with purchasers of LG-manufactured
2  rMBPs. Thus, Hodges fails to adequately allege that Apple breached any contract, express or
3  implied.

### D. Apple's Motion To Dismiss Is Granted.

For all the reasons stated above, Hodges has failed to state any claim upon which relief can be granted. However, the Court does not find that his pleading "could not possibly be cured by allegations of other facts." *Cook, Perkiss & Liehe*, 911 F.2d at 247. Thus, Apple's motion to dismiss Hodges's FAC is GRANTED WITH LEAVE TO AMEND.

## II. MOTION TO STRIKE

Apple moves to strike Hodges's request for injunctive relief. A court should not strike a pleading if the claim at issue is viable. *See In re Toyota Motor Corp. Litig.*, 754 F. Supp. 2d 1145, 1177 (C.D. Cal. 2010). The purpose of striking is to "avoid the expenditure of time and money that must arise from litigating spurious issues." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "However, if a pleading is deficient, the Court may strike the pleading and require the non-moving party to submit an amended pleading which includes more specific allegations." *Smith v. Wal-Mart Stores*, No. 06-cv-2069-SBA, 2006 WL 2711468, at *2 (N.D. Cal. Sept. 20, 2006).

Here, Hodges seeks an "order enjoining the methods, acts or practices" of Apple that the Court may find unlawful. FAC at 20. A plaintiff must show a "likelihood of future injury to warrant equitable relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999). The Court has already found that Hodges fails to adequately show that he is entitled to any relief based on his FAC. Hodges therefore fails to show a likelihood of future injury as well. However, an amended complaint may adequately state a claim for relief and a likelihood of future injury. Thus, Apple's motion to strike Hodge's request for injunctive relief is GRANTED WITH LEAVE TO AMEND.

## CONCLUSION

Because Hodges's FAC fails to adequately state a claim upon which relief may be granted, Apple's motion to dismiss is GRANTED WITH LEAVE TO AMEND. And because Hodges's

1  FAC fails to show that he is entitled to injunctive relief, Apple's motion to strike is also

2  GRANTED WITH LEAVE TO AMEND. The Court ORDERS Hodges to file any amended

3  complaint no later than 30 days from the date of this Order.

4  **IT IS SO ORDERED.**

5  Dated: August 12, 2013



WILLIAM H. ORRICK
United States District Judge