UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEAU HODGES,

    Plaintiff,

    v.

APPLE INC.,

    Defendant.

Case No. 13-cv-01128-WHO

**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE AND DEEMING MOOT MOTION TO STRIKE SECOND AMENDED COMPLAINT**

Re: Dkt. No. 48

## INTRODUCTION

Plaintiff Beau Hodges's Second Amended Complaint ("SAC") against Apple Inc. alleges violations of California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and breach of contract because the screens on Apple's MacBook Pro with Retina Display ("rMBP") computers experience differing rates of display defects depending on a particular screen's supplier. The Court previously dismissed Hodges's First Amended Complaint "[b]ecause, fundamentally, Hodges ha[d] not identified any affirmative misrepresentation made by Apple," had not identified any fraudulent omission by Apple, and had not adequately alleged breach of contract. Because those same defects appear in the SAC, the motion to dismiss the SAC is GRANTED WITH PREJUDICE and the motion to strike Hodges's request for injunctive relief is DEEMED MOOT.

## FACTUAL BACKGROUND

The Court accepts the following factual allegations as true for purposes of deciding the motion to dismiss.

In June 2012, Apple began selling its MacBook Pro with Retina Display. SAC ¶ 15.

"Apple targeted its marketing effort at consumers who desire the absolute highest quality computer displays" and represented by its "own statements" that the rMBP's image quality is a key feature of the product line. SAC ¶¶ 48-49. "Apple communicated [the MacBook] product line name information to consumers . . . so that those consumers could rely on that name when determining which one of Apple's products they wanted to purchase." SAC ¶ 26. There are seven models of rMBPs, each having unique identifiers consisting of the computer name itself, the part or order number, the model or family number, the model ID, and "Subfamily." SAC ¶ 27. These identifiers are used in selling the computers and are printed on their boxes. SAC ¶¶ 28-38. "[E]very consumer must depend on the specific computer name, Part Number/Model Number, and price to determine which specific computer they are purchasing." SAC ¶ 40.

  Apple's rMBPs were produced by two different manufacturers, the Samsung Group ("Samsung") and LG Electronics ("LG"). SAC ¶ 4. About two months after rMBPs arrived on the market, purchasers of rMBPs produced by LG reported that their screens would exhibit image retention, burn-in, and color accuracy problems. SAC ¶ 53. Image retention occurs when an accumulation of static leaves a temporary residual image on the screen that goes away after the static build-up dissipates. SAC ¶ 54. "Burn-in" is similar to image retention, but is more serious because the residual image remains on the screen permanently. SAC ¶ 56. Samsung-produced rMBPs did not have the same problems. SAC ¶¶ 47, 58. In addition, Samsung's screens allegedly "outperform[ ]" LG's screens by being brighter and having greater accuracy of color. SAC ¶ 60. Accordingly, "the LG Version of the MacBook Pro with Retina display is materially inferior to the Samsung Version of the MacBook Pro with Retina display, in that the LG Version, unlike the Samsung Version, is susceptible to serious image quality issues, including image retention, burn-in, and color inaccuracy or dullness." SAC ¶ 5.

  Despite these problems, "Apple sells both the LG Version rMBP and the Samsung Version rMBP as the same exact product line, using the same name and identifiers [ ], at the same price point, thus affirmatively representing that they are identical and concealing that there is a significant difference in quality between the two versions." SAC ¶ 62. Apple "is aware" of the differences between the two rMBPs, "spent considerable time testing" both versions during

research and development, and knew of this problem before selling the rMBPs because testing was easy. SAC ¶¶ 63-67. Nonetheless, Apple "*publicly denied and actively concealed*" the issues despite receiving complaints on its own online fora. SAC ¶¶ 69-75. However, Apple made a post online titled, "Avoiding image persistence on Apple displays," and "blamed the Image Quality Issues on 'In-plane switching (IPS) technology . . . built in to . . . MacBook Pro with Retina display computers,' *but remained silent on the exclusive presence of Image Quality Issues in only the LG Version rMBPs*." SAC ¶ 76 (original ellipses and emphasis). "None of Apple's advertisements or representations disclose that Apple produces rMBPs with display screens that exhibit different levels of performance and quality"—information that consumers would want to know before purchasing an rMBP. SAC ¶¶ 78-79. Consumers have no way of knowing who manufactured their rMBP until after they purchase an rMBP. SAC ¶¶ 86-87.

Consumers "reasonably expect" that a computer with the same name and identifiers "would be of materially equivalent quality to every other computer so specifically represented because they share all of the same identifiers." SAC ¶ 43. However, a particular "MC975LL/A" rMBP is not the same as all other such computers because "roughly half" of all such models, as well as the six other rMBP models, are made by Samsung and the other half are made by LG. SAC ¶ 44. "By affirmatively representing a common name, Part Number/Order Number, Subfamily, Model No., Model ID, and price for each model within its rMBP product line, Apple has affirmatively represented that any one computer of each rMBP model is materially identical to any other computer sharing those same identifiers." SAC ¶ 45. "Despite affirmatively representing that it was selling one product line – the MacBook Pro with Retina display product line – Apple failed to tell consumers that there are actually *two* versions of that product line . . . ." SAC ¶ 51.

Hodges purchased "what he reasonably expected to be a 'MacBook Pro with Retina display'" through Apple's online store on June 22, 2012. SAC ¶ 12. In particular, he bought a "'MacBook Pro 14-inch: 2.3 GHz with Retina Display,' part number 'MC975LL/A,'" and "rel[ied] on the affirmative statements Apple made about that computer on its www.store.apple.com website, including Apple's statement that it was offering a 'MacBook Pro

3

1   with Retina display.'" SAC ¶¶ 12, 89. "When he physically received his computer from Apple,
2   Mr. Hodges further relied on Apple's statements on the packaging of his computer 'Part No.
3   MC975LL/A,' 'Model No. A1398,' and '15-inch high-performance notebook with Retina display'
4   to confirm that Apple had, in fact, sent him the computer he had ordered." SAC ¶ 90.

5       One month later, he started experiencing image-retention issues. SAC ¶ 91. Hodges later
6   discovered that his rMBP was made by LG. SAC ¶ 92. "Mr. Hodges reasonably expected that the
7   display on the MacBook Pro with Retina display that Apple sold to him would be of the same
8   material quality as the display on any other MacBook Pro with Retina display of the same model
9   that Apple sold to any other consumer, because his MacBook Pro with Retina display was
10  described by Apple in the exact same way as every other MacBook Pro with Retina display of the
11  same model that Apple sold." SAC ¶ 93. That was not the case, however, despite being
12  identically marketed, priced, and labeled. SAC ¶¶ 94-95. Hodges was therefore "injured by
13  Apple's fraudulent, deceptive, and misleading practice of representing that all MacBook Pro with
14  Retina display computers are of the same material quality when, in fact, half of them are
15  consistently better than the other half . . . ." SAC ¶ 96. Further, because these two versions "were
16  not and are not the same when Apple said they were," Apple breached its contract of sale and the
17  covenant of good faith and fair dealing with Hodges and other rMBP purchasers. SAC ¶ 7.

18                                    **PROCEDURAL BACKGROUND**

19      Hodges filed this putative class action against Apple on March 13, 2013. On May 6, 2013,
20  Hodges filed an amended complaint ("FAC"), Dkt. No. 20, to which Apple filed a motion to
21  dismiss and to strike, Dkt. No. 21. The Court granted Apple's motion to dismiss and to strike with
22  leave to amend. Dkt. No. 40 ("Order"). On September 25, 2013, Hodges filed this SAC, Dkt. No.
23  45, to which Apple filed a motion to dismiss and to strike, Dkt. No. 48.[1]

---

[1] Apple filed a Request for Judicial Notice concurrently with its motion to dismiss and to strike. Dkt. No. 22. The document is a copy of Apple's warranty applicable to Hodges's purchase. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, any warranty that is part of Hodges's purchase necessarily forms the basis for his breach-of-contract claim. In addition, Hodges does not object to the request or question the authenticity of the warranty— indeed, he referred to it extensively throughout his opposition brief and at the hearing. *See, e.g.*,

4

1    Hodges brings the following causes of action: (1) violation of California's Consumer
2    Legal Remedies Act, CAL. CIV. CODE §§ 1750 *et seq.*; (2) violation of the unlawful, unfair, and
3    fraudulent prongs of California's Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200 *et*
4    *seq.*; and (3) breach of contract.

## LEGAL STANDARD

### I. MOTION TO DISMISS

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The complaint "does not need detailed factual allegations," but instead only needs enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012).

Additionally, fraud claims are subject to a higher standard and must be pleaded with particularity. FED. R. CIV. PRO. 9(b). This is true of claims under both the CLRA and UCL that are grounded in fraud, which must "be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003) (quotation marks omitted). Such claims "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). A plaintiff claiming fraud must also plead reliance. *Kwikset Corp. v. Super. Court of Orange Cnty.*, 51 Cal. 4th 310, 326-27 (2011) (UCL); *Princess Cruise Lines v. Super. Court of Los Angeles Cnty.*, 101 Cal. Rptr. 3d 323, 331 (Ct. App. 2009) (CLRA). The challenged statements must be judged against the "reasonable

---

Opp'n 19-22. Thus, the request is granted.

5

consumer" standard under either statute. *Consumer Advocates v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d. 22, 29 (Ct. App. 2003).

If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). In particular, "dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice." *Vess*, 317 F.3d at 1108.

## II.  MOTION TO STRIKE

Under Federal Rule of Civil Procedure 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. PRO. 12(f). "However, motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 969 (N.D. Cal. 2009) (quotation marks and brackets omitted). Thus, while a court "must view the pleading in a light most favorable to the pleading party," motions to strike "should be denied unless the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit." *Id.* (citations omitted).

## DISCUSSION

## I.  NEW ALLEGATIONS AND EVIDENCE IN OPPOSITION BRIEF

In his opposition brief, Hodges appears to make new factual allegations and cites to evidence not found in the SAC. Hodges claims that Apple did not produce its responses to interrogatories and certain documents to him until about three weeks after he had filed his SAC, and those new documents contain relevant information. Opp'n (Dkt. No. 62) 3 n.1. On the other hand, Apple argues that Hodges could have sought leave to amend his complaint in his opposition brief, but did not. Reply (Dkt. No. 65) 1 n.1.

In deciding a motion to dismiss, a court must generally look at the complaint only. Hodges cites to no authority stating that a court may consider new allegations and evidence raised in an opposition brief in considering whether the complaint adequately states a claim. However, the

6

Court need not decide that issue because, as discussed below, even if the Court treated Hodges's new allegations and evidence as having been pleaded in the SAC, he still fails to state a claim.

## II. MOTION TO DISMISS

Apple moves to dismiss Hodges's claims under the CLRA and UCL, and for breach of contract. The Court will address these in turn.

### A. CLRA

The CLRA prohibits "[r]epresenting that goods . . . have . . . characteristics, . . . benefits, or quantities which they do not have" or "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another." CAL. CIV. CODE § 1770 (West 2013). The statute prohibits both actual misrepresentations and "fraudulent omissions." *Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 126 (Ct. App. 2006). In interpreting the CLRA and considering *Daugherty v. American Honda Motor Company*, the Ninth Circuit held that "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue."[2] *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). To survive a motion to dismiss, the plaintiff must plead with particularity that the defendant made an actual misrepresentation, an omission "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose" related to safety concerns. *Id.*; *Daugherty*, 51 Cal. Rptr. 3d at 126; *see also Bardin v. Daimlerchrysler Corp.*, 39 Cal. Rptr. 3d 634, 648 (Ct. App. 2006).

#### 1. CLRA: Actual Misrepresentation

In its Order, the Court dismissed Hodges's FAC because Hodges's allegation that "Apple represents the rMBP as a single, unitary product" did not plead with particularity that Apple made any actual misrepresentations. Order 5 (quoting FAC ¶ 38). In the SAC, the only additional factual allegation concerning actual misrepresentation is that Apple sells its rMBPs with the same identification information, regardless of whether they were manufactured by LG or Samsung. But that is hardly different from the FAC's allegation that LG- and Samsung-manufactured rMBPs are

---

[2] Hodges does not claim that Apple failed to honor the terms of any express warranty and neglects to mention the existence of any warranty in his SAC.

7

all sold under the same name as "MacBook Pros with Retina display" and in the same manner because Hodges still fails to point to any misrepresentation that Apple has made. Even though the rMBPs may have varying levels of display defects, Hodges has not identified a single actual representation by Apple that all its rMBPs are of identical quality, are from the same manufacturer, or suffer from the same rate of defects.

The CLRA provides a cause of action if a defendant represents that goods have characteristics that they do not have or are of a particular quality that they are not, and the plaintiff can show actual misrepresentation. Order 5 (citing CAL. CIV. CODE § 1770 (West 2013); *Daugherty*, 51 Cal. Rptr. At 126). To show an affirmative representation, a statement must make a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). Hodges provides no example of any specific or measurable claims capable of being proved false or interpreted as a statement of objective fact. He does not point to any false or misleading statement that Apple made about the rMBP's performance or production, nor does he give any examples of Apple's claiming that they are identical. Rather, "the only 'affirmative representation' that Hodges ever identifies is that Apple gave the product *a name*." Br. (Dkt. No. 48) 8 (citing SAC ¶¶ 16-17, 19-45). As Apple correctly argues, nothing in the product's name suggests that every computer will be identical or that no rMBP will be "superior" to any other, or that they are defect-free, Br. 9, and Hodges cites to no authority stating that a product's name or identification numbers, without more, are representations that all iterations of that product are uniform and identical. Hodges asserts that "Apple markets its rMBP product line to all consumers nationwide in the same way," and thus "consumers reasonably expected that they would all be of uniform quality to one another." Opp'n 3, 6. But Hodges does not say that Apple's marketing states that its rMBPs "would all be of uniform quality to one another."

Hodges argues that Apple should be liable because the use of trademarked product names are affirmative representations of equal quality. Opp'n 13. Citing *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 993 (9th Cir. 2006), Hodges says that "the purposes of trademark protection are to protect the public's expectation regarding the source and quality of goods."

8

Opp'n 14 (citing *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 598 (9th Cir. 2002) (quoting 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:55 (4th ed. 2001), for the proposition, "It is important to keep in mind that 'quality control' does not necessarily mean that the licensed goods or services must be of 'high' quality, but merely of equal quality, whether that quality is high, low or middle. *The point is that customers are entitled to assume that the nature and quality of goods and services sold under the mark at all licensed outlets will be consistent and predictable.*")). By using the trademarked terms "MacBook Pro" and "Retina," Apple made "affirmative representations that all products named the same are, in fact, alike." Opp'n 14-15.

Hodges's argument is unconvincing. While one goal of federal trademark law is to protect the integrity of protected marks and thus trademark owners must control the quality of their products, *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 595-96 (9th Cir. 2002), Hodges points to no authority holding that the goals of federal trademark law have any binding legal principles to be applied in the CLRA or UCL context. If a trademark holder fails to adequately exercise quality control, "a court may find that the trademark owner has abandoned the trademark, in which case the owner would be estopped from asserting rights to the trademark." *Id.* (citation omitted). If Hodges seeks to invalidate Apple's trademarks, he may do so elsewhere, but this case involves actual misrepresentations, of which Hodges has shown none.[3]

Hodges urges that the cases cited by Apple are inapplicable because "[n]one of those cases involves the sale of two versions of one product marketed under the same name and representations." Opp'n 16. He points to two cases in particular. In a string citation, Apple cites *Szajna v. General Motors Corp.*, 115 Ill. 2d 294 (1986), for the proposition that use of a trademark is not actionable merely because the product contained allegedly inferior products. Br. 8. Apple also cites *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008), for the proposition that an "alleged failure to disclose [a] defect . . . 'cannot be characterized as causing a substantial

---

[3] Apple also rejects Hodges's argument that because Apple has litigated in the past to protect its trademark, those efforts are somehow an affirmative representation that its products are uniform. Reply 9. The Court agrees that such issues are irrelevant here.

9

1    injury to consumers, and accordingly does not constitute an unfair practice under the UCL.'"  Br.
2    11, 14.  Hodges argues that *Szajna* is factually distinguishable.  Similarly, he asserts that *Clemens*
3    involved a product defect, not a situation in which the same name was used to represent "different
4    versions" of a product.  Opp'n 16-17.

5    Hodges's attempts to distinguish the cases cited by Apple are unhelpful.  First, *Szajna* is an
6    Illinois Supreme Court case and does not control, especially in light of the available authority on
7    point in this state.  Second, contrary to Hodges's assertion, *Clemens* is relevant because the Ninth
8    Circuit applied the UCL and explained what constitutes fraudulent and unfair conduct.  534 F.3d
9    1025-27.  But in any event, the Court does not dismiss Hodges's claim based solely on the cases
10   cited by Apple, but because he still has not alleged any actual misrepresentation made by Apple.

11   Hodges points to facts in his opposition brief that he did not include in his SAC to support
12   his opposition to the motion to dismiss.  Many of these facts are confidential because of their
13   sensitive nature and have been filed under seal, which explains the redactions below.  Hodges
14   argues that despite Apple's argument that the Samsung-produced rMBP is not the "baseline,"
15   ███████████████████████████████████████████████████████████████.  Opp'n 17
16   n.15.  Hodges says that Apple admits in its interrogatories that:  it has image retention
17   specifications for rMBPs, Apple Interrog. Resp. No. 5; ███████████████████████████
18   ██████████████████████████████████████████████████████████████████████
19   ██████████████████████████████████████████████████████████████████████
20   ██████████████████████████████████████████████████████████████████████
21   ██████████████████████████████████████████████████████████████████████
22   ██████████████████████████████████████████████████████████████████████
23   ██████████████████████████████████████████████████████████████████████
24   ██████████████████████████████████████████████████████████████████
25   ██████████████████████████████████████████████████████████████████████
26   ████████████████████████████████████████████████████████████████
27   ██████████████████████████████████████████████████████████████████████
28   ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ Thus, Hodges argues that Apple "*knew* from the time prior to product launch until the present that LG Version rMBPs were different from the other rMBPs because of the image quality problems." Opp'n 10. But Apple never disclosed it. On the contrary, "Apple instructed its technicians to tell complaining customers that image retention was normal." Opp'n 11.

Claims under the UCL and CLRA require proving the defendant's knowledge. *Wilson*, 668 F.3d at 1145. While the additional facts Hodges cites in his opposition brief may show an inference of knowledge, Hodges's SAC still fails because it does not plead with particularity any actual misrepresentation Apple made. Though Hodges claims that Apple instructed its employees to tell customers that image retention was "normal," he never pleads with particularity that this in fact happened, when or where it happened, or that he heard such statements and relied upon them.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████,[4] Hodges does not allege that the information in the statement is untrue or that such instructions were actually carried out. Similarly, Hodges does not allege that Apple's response to an online technical support post stating that image retention "is normal behavior for an IPS display, and the faint image will disappear over time" (which Hodges only quotes in its opposition brief but not in the SAC) was either untrue or something that he himself read and relied upon. Opp'n 9 n.9. Even if the Court were to consider the additional evidence and allegations offered by Hodges in his opposition brief, he still fails to state a claim.

Apple argues that the "basic premise of Hodges's position in this case—that a product's name is a guarantee of uniformity—is fundamentally inconsistent with the existence of manufacturers' warranties, which address the inescapable reality that there will [ ] always be some non-conforming parts in any manufacturing run." Reply 10. In addition, adopting Hodges's

---

[4] Apple correctly notes at the motion hearing that the exhibit cited by Hodges appears to be from March 2013—nearly nine months after Hodges purchased his rMBP.

11

1  position will make manufacturers liable for fraud if even a tiny percentage of a named product is
2  unlike the others in any manner.  The Court agrees that Hodges's position and underlying theory
3  would lead to untenable results that do not reflect the realities of the marketplace.

### 2.  CLRA:  Fraudulent Omission

The Ninth Circuit in *Wilson*—a published opinion of the court—explained that a defendant "is not liable for a fraudulent omission concerning a latent defect under the CLRA, unless the omission is 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'"  668 F.3d at 1141 (citing *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 118 (Ct. App. 2006)).  It then said that only "safety concerns" trigger an obligation to disclose a latent defect.  *Id.* at 1141-42.  Citing *Daugherty*, the court stated, "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue."  *Id.*  Thus, a district court properly dismisses a CLRA claim where the plaintiff does not "claim that the alleged defect posed a threat to his own safety or that of others."  *Id.*

As the Order dismissing Hodges's FAC stated, "The Court follows *Wilson*."  Hodges still has not alleged that Apple's failure to disclose that rMBPs are manufactured by two different companies, or that one version of the rMBP is more susceptible to malfunction than the other, relates to a safety concern or issue.  Because he has not added to his SAC in this regard, Hodges cannot adequately plead fraudulent omission under the CLRA.  Nor does Hodges adequately plead that Apple made some omission that is contrary to a representation it actually made.

Hodges argues that the Court was erroneous in declining to apply the four-factor test for materiality in *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 593-94 (Ct. App. 2011).  The Court's "exclusive reliance" on *Wilson*, 668 F.3d 1136, and *Daugherty*, 51 Cal. Rptr. 118, "cannot be reconciled" with *Vitt v. Apple Computer*, 469 Fed. App'x 605 (9th Cir. 2012)—a case never cited by Hodges in his first opposition brief.  Dkt. No. 34.  Whereas the plaintiffs in *Wilson* and *Daugherty* sought relief after the expiration of their product warranties, Hodges explains, "*Collins* recognized that manufacturing defects and claims within the warranty period do not amount to an 'end-run around the warranty laws.'"  Opp'n 24 (citing *Collins v. eMachines, Inc.*, 134 Cal. Rptr.

12

3d 588, 595 (Ct. App. 2011)). Here, as in *Collins*, Hodges's claims "arose upon manufacture and Apple's marketing of differently manufactured products as the same" and "were brought within the warranty period." Opp'n 24. "It is precisely on this basis that the Court of Appeals in *Vitt* distinguished *Collins* and reconciled its holding with those of *Daugherty* and its progeny." Opp'n 24 (citing *Vitt*, 469 F.3d App'x at 608-609). Thus, "although a plaintiff cannot state a UCL or CLRA omissions claim alleging premature wear and tear of an out-of-warranty product unless the undisclosed defect poses a safety risk, a plaintiff can state a UCL or CLRA omissions claim without alleging a such safety risk where the facts involve an undisclosed defect present from the time of manufacture of which the defendant was aware." Opp'n 24-25. According to Hodges, *Collins* applies and Apple cannot rely on a warranty to avoid CLRA and UCL omission liability for known defects.

Hodges's arguments are unpersuasive. As the Court and the Ninth Circuit recognized, California state and federal courts are split on this issue of law.[5] Order 7; *Wilson*, 668 F.3d at 1141. However, *Vitt* is an unpublished opinion and, as the Ninth Circuit has instructed, is not precedent.[6] Ninth Circuit Rule 36-3. On the other hand, *Wilson* is published and binding. *Wilson* does not support the argument Hodges makes.

*Wilson* specifically considered a complaint that "alleged that [the defendant] was aware, prior to the marketing and selling of the Laptops, that the Laptops were inherently defective." *Id.* at 1139. These are the allegations Hodges makes here. Hodges provides no argument why the principle that "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue" does not apply, regardless of when his claims were brought. *Id.* at 1141; *see also Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1105

---

[5] "The California Courts of Appeal are split on whether these factors [for materiality] . . . properly apply to UCL and CLRA omission claims." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 n.2 (E.D. Cal. 2013); *see also Buller v. Sutter Health*, 160 Cal. App. 4th 981, 988 n.3 (Ct. App. 2008) (rejecting "proposition that a failure to disclose is actionable under the UCL if it satisfies one of the four tests for the tort of fraud by failure to disclose").

[6] In *Vitt*, the Ninth Circuit declined to apply *Collins*'s materiality test because, like the plaintiffs in *Daugherty*, the plaintiffs sought to impose a duty of disclosure beyond the warranty period. 469 Fed. App'x at 608-09. *Collins*, a state court case, applied a materiality test to determine whether a failure to disclose constitutes fraud. Order 7 (citing *Collins*, 134 Cal. Rptr. 593-94). However, *Wilson* was decided after *Collins*.

13

1  (N.D. Cal. 2007) ("There is no authority that provides that the mere sale of a consumer electronics product in California can create a duty to disclose any defect that may occur during the useful life of the product.").

In any case, Hodges has not alleged that Apple failed to meet its warranty obligations during the warranty term or that he even attempted to avail himself of them, nor has he alleged any safety related issues or affirmative representations. Even accepting Hodges's view of the law as correct, Hodges fails to plead with particularity that he actually relied upon any omission by Apple and would have proceeded differently but for the alleged omission. *See Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 973 (Ct. App. 2009). Thus, his claim for fraudulent omission fails.

### 3. Hodges Fails To State A Claim Under The CLRA.

Because Hodges has not pleaded with particularity any actual misrepresentation or any omission of a safety-related fact that Apple was obliged to disclose, nor has he pleaded with particularity any omission contrary to a representation Apple made, he fails to state a claim for relief under the CLRA.

### B. UCL

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Wilson*, 668 F.3d at 1140.

### 1. UCL: "Fraudulent" Prong

Hodges fails to state a claim under the UCL's "fraudulent" prong because he does not plead with particularity that Apple made any deceptive representations. A claim under the "fraudulent" prong of the UCL "require[s] only a showing that members of the public are likely to be deceived." *Daugherty*, 51 Cal. Rptr. 3d at 128; *Schnall v. Hertz Corp.*, 93 Cal. Rptr. 439, 457 (Ct. App. 2000). As discussed above, Hodges can point to no actionable statement that Apple made which is untrue, misleading, or deceptive.

Hodges also fails to state a claim under the UCL's "fraudulent" prong because he does not plead with particularity that Apple had a duty to disclose some fact but did not do so. "[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Daugherty*, 51 Cal. Rptr. 3d at 128. "[M]embers of the public must have had an expectation or an assumption" about the matter in question for liability to attach. *Bardin*, 39 Cal. Rptr. 3d at 647. As with the FAC, Hodges has not alleged with particularity that members of the public had any reasonable expectation or assumption that rMBPs are all identical and from the same manufacturer, or are not susceptible to defects. He still fails to plead that Apple has an obligation to identify its suppliers when it offers a product, or to disclose which product may be more or less susceptible to defects unrelated to safety. Thus, he fails to state a claim.

### 2. UCL: "Unfair" Prong

Hodges fails to state a claim under the UCL's "unfair" prong because he does not plead with particularity that Apple violated some public policy or that any harm to him outweighs the utility of Apple's conduct. As the Court noted in its Order, courts have applied two tests to assess unfairness. Some courts have held that the "unfair" prong requires alleging a practice that "offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the policy must be "tethered to specific constitutional, statutory or regulatory provisions." *Bardin*, 39 Cal. Rptr. 3d at 642, 645 (quotations omitted). Other courts have held that the court must apply a balancing test that "weigh[s] the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Schnall*, 93 Cal. Rptr. 4th at 456.

Under either test, Hodges fails to state a claim for relief. Hodges provides absolutely no argument in his opposition brief about why he should prevail under this prong. As with the FAC, Hodges does not identify any law whose policy Apple violated except for vague allusions to deceit, consumer protection, and unfair competition. *See* SAC ¶ 131; *see also Baba v. Hewlett-Packard Co.*, No. 09-cv-05946-RS, 2010 WL 2486353, at *8 (N.D. Cal. June 16, 2010) ("cursorily listing the same string of statutes as were associated with the 'unlawful' prong and

15

alleging vaguely that '[Defendant's] conduct offends public policy and is unethical, oppressive, unscrupulous and violates the laws stated' . . . necessitates dismissal"). Similarly, Hodges still does not allege that he availed himself of the warranty that Apple provides on its computers, which, as the Court noted in its Order, significantly weakens any claim of unfairness Hodges asserts. Thus, he fails to state a claim.

### 3. UCL: "Unlawful" Prong

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." *Daugherty*, 51 Cal. Rptr. 3d at 128. A plaintiff "must identify the particular section of the statute that was violated" and "plead with particularity how the facts of this case pertain to that specific statute." *Baba*, 2010 WL 2486353, at *6. In dismissing the same claim from his FAC, the Court noted that "Hodges merely accuses Apple of 'violating Civil Code §§ 1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§ 17200, *et seq.*, 17500, *et seq.*, and the common law' without stating which part of each statute was violated and how." Order 11 (quoting FAC ¶ 75). Hodges has provided the same language here. SAC ¶ 128. Because Hodges fails to plead with particularity how Apple violated any statute, he also fails to adequately plead a violation under the UCL's "unlawful" prong.

### 4. Hodges Fails To State A Claim Under The UCL.

Because Hodges has not pleaded with particularity that Apple engaged in any unlawful, unfair, or fraudulent business act or practice, he fails to state a claim for relief under any prong of the UCL.

### C. Breach of Contract

Hodges fails to adequately plead a breach of contract. As with his FAC, Hodges argues that each purchase of an rMBP constitutes a contract. SAC ¶ 141. Assuming a contract exists, a defendant has not "breached any contractual obligations to consumers" when consumers bargain for some product and "plaintiffs have presented no evidence that this is not what they received." *Lopez v. Nissan N. Am.*, 135 Cal. Rptr. 3d 116, 136 (Ct. App. 2011). Here, as Hodges alleges, "Apple offered to sell Plaintiff and the other Class members a 'MacBook Pro with Retina display,' more particularly described by Part Number/Order Number." SAC ¶ 142. But Hodges does not

16

allege that that is not what consumers receive when they buy an rMBP, even if some are defective. Accordingly, his claim cannot survive.

Hodges argues that "Apple failed to sell him the rMBP that it promised it would sell him," Opp'n 12-13, and thus Apple breached a contract. "Apple has made affirmative representations about *what* it was selling to its customers, [and thus] it has breached its contract of sale with those customers and further breached the implied covenant of good faith and fair dealing by sticking its customers who ended up with the LG Version rMBP with a product that Apple *knew* was inferior to identically marketed and priced products Apple sold to others." Opp'n 21. Hodges asserts that "the contract at issue is Apple's promise to sell the represented rMBP to Hodges and other Class members, instead of multiple varieties of RMBP of differing qualities while concealing those differences." Opp'n 22. He asserts that the cases Apple cites are distinguishable because "this is not a situation in which Plaintiff alleges a contract is breached because the product fails to function beyond the warranty period; rather Plaintiff alleges Apple breached his contract at the outset by selling him the inferior LG Version rMBP." Opp'n 22 n.19.

As the Court noted in its Order, the fact that some rMBPs were better or worse than others does not alter the fact that consumers received what Hodges alleges Apple offered. It does not matter that Hodges is dissatisfied with his purchase. Importantly, Hodges cannot point to a single instance in which Apple offered to sell him only a Samsung-version rMBP, or one free from defects such as image retention, or an rMBP identical to every other one on the market. Without pointing to such an offer and a promise made based upon that offer, his claim necessarily fails.

Hodges also fails to adequately plead that Apple breached the implied covenants of good faith and fair dealing. The implied covenants ensure that no party to a contract will "injure the right of the other to receive the benefits of the agreement." *Daly v. United Healthcare Ins. Co.*, No. 10-cv-03032-LHK, 2010 WL 4510911, at *3 (N.D. Cal. Nov. 1, 2010). As with the FAC, Hodges does not dispute that Apple's one-year limited warranty is available to consumers who have a defective rMBP and want to replace it, nor has Hodges alleged any examples of Apple refusing to honor its warranty. Rather, Hodges argues, "By deliberately selling two versions of the rMBP using the same representations and at the same price, one of which was materially

17

inferior to the other, Apple unfairly frustrated both the agreed common purpose of the contract and the reasonable expectations of Hodges and the other Class members." Opp'n 23.  But Hodges does not explain why the "agreed common purpose of the contract and the reasonable expectations" of consumers is not limited to Apple's providing an rMBP and the accompanying one-year limited warranty or how Apple has "unfairly frustrated" the contract.

As the sole case cited by Hodges in the body of his opposition brief held, "Simply stated, the burden imposed [by the implied covenants] is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (Ct. App. 1990); *see also* Order 12.  Although Hodges alleges that Apple hid the disparity between the LG- and Samsung-manufactured rMBPs and continued selling rMBPs despite knowing of the disparity, Hodges fails to explain how Apple has "do[ne] anything which will injure [his] right . . . to receive the benefits of the agreement." Hodges received a computer and a warranty, and has not alleged that Apple refused or is unable to honor its warranty to replace his computer if necessary.  If anything, it is Hodges who is injuring his own right to receive the benefits of the agreement by failing to avail the benefits he has from it. Accordingly, Hodges fails to adequately allege that Apple breached any contract, express or implied.

### D. Apple's Motion To Dismiss Is Granted With Prejudice.

For all the reasons stated above, Hodges has failed to state any claim upon which relief can be granted.  The Court inquired at oral argument whether Hodges wished to amend his complaint again, and counsel declined.  The Court finds that his pleading "could not possibly be cured by allegations of other facts." *Cook, Perkiss & Liehe*, 911 F.2d at 247.  Apple's motion to dismiss Hodges's SAC is GRANTED WITH PREJUDICE.  Because the Court is dismissing Hodges's complaint with prejudice, Apple's motion to strike Hodges's request for injunctive relief is DEEMED MOOT.

### CONCLUSION

Hodges has had three opportunities to point to any actual misrepresentation that Apple made and to show that Apple failed any duty of disclosure.  He has not done so despite detailed

instructions from the Court in its Order. Hodges's SAC not only fails to meet the heightened pleading standards for fraud under Rule 9(b), it fails to be "plausible" under the ordinary pleading standard of Rule 8.

At the motion hearing, Hodges's counsel advised the Court that Hodges had nothing more to add to his pleadings. Based on that representation, and because Hodges's SAC does not adequately state a claim upon which relief may be granted, Apple's motion to dismiss is GRANTED WITH PREJUDICE. Apple's motion to strike is DEEMED MOOT.

**IT IS SO ORDERED.**

Dated: December 19, 2013

WILLIAM H. ORRICK
United States District Judge